**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2022 JUL 15 A 9:50

| | |
|---|---|
| KENNEDY REYES ) | |
|   Petitioner ) | |
| ) | |
| V ) | CASE NO.: 1:13-mj-02844-UA |
| ) | CIVIL ACTION: To Be Assigned |
| ) | |
| UNITED STATES OF AMERICA ) | |

## HABEAS CORPUS MOTION BY PERSON IN BOP CUSTODY PURSUANT TO 28 U.S.C. § 2241

COMES NOW, the petitioner, KENNEDY REYES (hereinafter "Reyes" or "Petitioner") pro se' and in absentia with this **HABEAS CORPUS MOTION BY PERSON IN BOP CUSTODY PURSUANT TO 28 U.S.C. § 2241.** "A pro se complaint requires a liberal interpretation and is subject to 'less stringent standards than formal pleadings drafted by lawyers'. As such a pro se complaint will be dismissed only for failure to state a claim 'where it appears beyond doubt that the Plaintiff can prove to set of facts in support of a claim which would entitle him to relief.' 429 U.S. 97, 106."

"The court must judge his pleadings by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594, reh'g denied, 405 U.S. 948, 30 L. Ed. 2d 819, 92 S. Ct. 963 (1972); accord Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ("We read [the pro se party's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."); Hanlin v. Mitchelson, 794 F.2d 834, 838-39 (2d Cir. 1986) (citing Haines to support the principle that pro se pleadings are given a liberal construction); see Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) (referring to the "special solicitude" afforded pro se litigants when confronted with motions for summary judgment). (Garcia v. NYPD PCT 41, 1997 U.S. Dist. Lexis 13656)

**PRELIMINARY STATEMENT**

1. Petitioner Kennedy Reyes comes to this honorable court today, pro se' and in absentia seeking habeas corpus whereas the United States Government and particular the United States Department of Justice and the Federal Bureau of Prisons have deprived him of "earned time credits" he earned while in BOP custody during the eligible period for such credits.

2. Petitioner Reyes now on HOME CONFINEMENT longer than rightfully sentenced to, after applying his "earned time credits" via the First Step Act of 2018 as prescribed below.

3. Petitioner Reyes now appears before this court asking that the court intercede on his behalf, within its scope of power, and direct the Bureau of Prisons and the United States Department of Justice, to apply those credits and immediately release him from supervised release as prescribed by the unambiguous First Step Act of 2018 and further enforced in precedent through Dyer v. Fulgam (1:21-CV-299-CLC-CHS, Eastern District of Tennessee)

**BACKGROUND**

On January 20, 2015 the petitioner, Kennedy Reyes, was sentenced to 144 months in Federal prison in the custody of the Bureau of Prisons ("BOP"), with a five year period of supervised release to immediately follow. This was the result of a finding of guilty to the crime of "Conspiracy To Distribute Narcotics" in violation of 21 U.S.C. § 846.

1

It's no secret that Mr. Reyes has had some other trouble in his past, however in this case, as soon as he began his Federal prison sentence he began participating in evidence based recidivism reducing programs and other productive activities (Exhibit "A"), well before the enactment of The First Step Act. The programming and activities Mr. Reyes participated in once the First Step Act period of eligibility began, (December 21, 2018) resulted in his earning 1747 in "earned time credits" as prescribed by the First Step Act of 2018 and outlined herein, which are redeemable for 873.5 days off of his community confinement or supervised release.

## MR. REYES IS FREE TO PROCEED ON THE MERITS

"... the exhaustion requirements under the the Prison Litigation Reform Act 42 U.S.C. §1997 e(a) ("PRLA"), will not apply. The PLRA "only applies when [a] plaintiff is confined in a correctional facility when the lawsuit is commenced": therefore, Plaintiff's amended complaint is not subject to administrative exhaustion. Q.F. v. Daniel 768 F. Appx 935, 938 (11th Cir 2019) (citing Harris v. Garner, 216 F.3d 970, 974(11th Cir. 2000) ("it is confinement status at the time the lawsuit is "brought" ie filed, that matters")).

Mr. Reyes, is, and has been on HOME CONFINEMENT since August 18, 2021 and not confined in a correctional facility, as such he is free to proceed on the merits. However, Mr. Reyes still did start administrative remedies by submitting a BP-9 to the RRM New York office.

## FIRST STEP ACT

The FSA provides that eligible inmates earn FSA Time Credits toward prerelease custody or early transfer to supervised release for successfully completing approved Evidence-Based

2

Recidivism Reduction (EBRR) Programs or Productive Activities (PAs) assigned to each inmate based on the inmate's risk and needs assessment. Inmates eligible to apply Time Credits under the FSA include individuals sentenced under the U.S. Code. As required by the FSA, an inmate cannot earn FSA Time Credits if that inmate is serving a sentence for a disqualifying offense or has a disqualifying prior conviction. However, such inmates may still earn other benefits for successfully completing recidivism reduction programming, such as increased privileges (commissary, visiting, and telephone) for participation in EBRR Programs or PAs, as authorized by the Bureau.

The FSA provides that an eligible inmate in Bureau custody who successfully participates in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment will earn FSA Time Credits, to be applied toward prerelease custody ( *i.e.,* transfer to a Residential Reentry Center (RRC) or home confinement for service of a portion of the inmate's sentence) or transfer to supervised release ( *i.e.,* early satisfaction of the inmate's term of imprisonment) under 18 U.S.C. 3624(g).

The FSA provides that "[a] prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. 3632(d)(4)(A)(i). An inmate determined to be at a "minimum or low risk for recidivating" who, "over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C.

3

3632(d)(4)(A)(ii). The statute does not expressly define what constitutes a "day" of successful participation. In the proposed rule, the Bureau defined it as "one eight-hour period of participation in an EBRR Program or PA that an eligible inmate successfully completes." On January 19, 2022 The Bureau of Prisons outlined their interpretation of "a day" and implemented accordingly, as shown "or every thirty-day period that an eligible inmate successfully participates in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, the inmate will earn ten days of FSA Time Credits. If the inmate is determined to be at a minimum or low risk for recidivating and can maintain that risk level for the most recent two consecutive risk and needs assessments, that inmate may earn an additional five days of FSA Time Credits per thirty-day period."

## ALL CLASSES AND ALL ACTIVITIES COUNT

According to both the First Step Act of 2018 and the Federal Register notes at implementation (January 2022), all classes and all "full time" jobs within the BOP prison system count for earned time credits. There are certain classes which have been identified as Evidence Based Recidivism Reducing Programs. Classes that do not fall under that category fall under the "catch all" of "other productive activities".

## THE FIRST STEP ACT IS SILENT ON THE NUMBER OF DAYS AN INMATE CAN EARN

Contrary to some beliefs, the First Step Act of 2018, Public Law 115-391 is silent on a maximum number of days earned.

4

"(4) TIME CREDITS.— "(A) IN GENERAL.—A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows: "(i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities. "(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities. "(B) AVAILABILITY.—A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed— "(i) prior to the date of enactment of this subchapter; or "(ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a). "(C) APPLICATION OF TIME CREDITS TOWARD PRERELEASE CUSTODY OR SUPERVISED RELEASE.—Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

In addition, Congress has stipulated, and through the Federal Register the BOP has concurred, that First Step Act earned time credits are "stackable" whereas if an inmate worked a full time job, and participated in classes they would earn effectively double credit.

## THE FIRST STEP ACT SPECIFICALLY INCLUDES SUPERVISED RELEASE

While the BOP has suggested to thousands of inmates that First Step Act earned time credits can not take time off supervised release, the above paragraph as well as ***Douglas A Dyer v. Michelle Fulgam (E.D. Tennessee 1:21-CV-CLC-CHS) specifically stipulate that a) inmates on home confinement are still in the custody of the Bureau of Prisons. b) that inmates on home confinement, are still eligible to earn First Step Act time credits because they are still in the custody of the Bureau of Prisons. c) A job, while on home confinement is a productive activity and an inmate is earning those credits while working.***


## THE FIRST STEP ACT IS UNAMBIGUOUS IN REGARDS TO SUPERVISED RELEASE

"The issue before the court is whether the Petitioner is entitled to relief for 489 days of unused FSA time credits he accumulated, or whether his petition is moot due to his transfer to supervised release."

"[I]n interpreting a statute a court should always turn first to one cardinal cannon before all others...[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut v. Bank v. Germain, 503 U.S. 249, 253-54 (1992) (noting "judiciary inquiry complete" when statue's language is unambiguous). Here the relevant statutory provision provides that "[t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reducing programs or productive activities shall be applied toward time in...supervised release". 18 U.S.C. § 3632(d)(4)(C). Therefore, the unambiguous

mandatory language of the statute provides that earned time credits may be applied to a supervised release" (Douglas A. Dyer v. Fulgam, 1:21-CV-299-CLC-CHC, Ed Tennessee).

MR. REYES HAS EARNED 1747 DAYS OF "EARNED TIME CREDIT" REDEEMABLE FOR 873.5 DAYS OFF OF HIS COMMUNITY CONFINEMENT AND SUPERVISED RELEASE AS DESCRIBED HEREIN

As previously referenced the First Step Act is unambiguous in the way that eligible inmates, such as Mr. Reyes, are able to earn and redeem "earned time credits". As outlined below, Reyes has earned 1747 days of "earned time credits" redeemable, (as prescribed) for 873.5 days off of his community confinement and supervised release. Because Reyes is currently on home confinement those 873.5 days must be applied against the remaining time Reyes has on home confinement and then to his term of supervision. Mr. Reyes has continually participated in programming since this incarceration began and remained incident report free through the entirety of his term of confinement.

| EBRR/PA | START | END | TIME | NET |
|---|---|---|---|---|
| Food Service CAMP (wrk) | 1/15/2021 | 8/18/21 | 73 | 36.5 |
| DAP AM 3 | 10/20/2020 | 8/18/21 | 302 | 151 |
| Info Community Resource CAMP | 4/18/2019 | 4/18/19 | 1 | 0.5 |
| Resume Writing | 6/5/2019 | 6/19/19 | 14 | 7 |
| Mock Job Fair | 6/27/19 | 6/27/19 | 1 | 0.5 |
| Nutrition | 6/22/2019 | 9/24/19 | 92 | 46 |
| Anatomy | 7/6/2019 | 9/24/19 | 78 | 39 |
| GED | 12/21/2018 | 9/27/19 | 276 | 138 |
| Weight Management | 6/22/2019 | 9/28/19 | 96 | 48 |
| Advanced Nutrition | 10/21/2019 | 12/10/19 | 49 | 24.5 |
| Disease Prevention | 10/21/2019 | **12/29/19** | 68 | 34 |
| Health Fair | 2/23/20 | 2/23/20 | 1 | 0.5 |
| Diabetes | 1/6/20 | 3/9/20 | 63 | 31.5 |

7

| | | | | |
|---|---|---|---|---|
| Men's Health | 1/6/20 | **3/24/20** | 72 | 36 |
| Origami | 12/5/19 | **1/11/20** | 37 | 18.5 |
| Logic Puzzles | 4/27/20 | **5/11/20** | 14 | 7 |
| Small Business Startup | 4/21 | 4/27/20 | 6 | 3 |
| Wellness | 8/28/20 | **9/4** | 7 | 3.5 |
| Male Sports Stars | 9/10/20 | 9/25/20 | 15 | 7.5 |
| Biographis | 2/16/21 | 3/9/21 | 21 | 10.5 |
| Reading Comprehension | 2/18/21 | 3/9/31 | 21 | 10.5 |
| Wellness | 4/17/21 | 4/17/21 | 1 | 0.5 |
| Certified Logistics Associate | 5/6/21 | 8/18/21 | 102 | 51 |
| African American History | 9/11/20 | 8/18/21 | 337 | 168.5 |
| | | **Total** | 1747 | 873.5 |
| | | **Months** | | 29.11 |

## CONCLUSION

Mr. Reyes is now 45. It has been proven through evidence based methodology that defendants over 40 actually are less likely to recidivate than those younger in age. With that in mind Reyes participated consistently in Evidence Based Recidivism Reduction Programs and other Productive Activities from the day he began this sentence. While incarcerated the First Step Act was enacted and passed. Reyes' recidivism level at the time the First Step Act was enacted made him immediately eligible for these credits. Reyes has been committed to his rehabilitation even after he left prison and will begin a CDL course as well. At this time Reyes prays that this honorable court will enforce the unambiguous First Step Act and immediately move him to supervised release.

Respectfully submitted this 12th day of July 2022

Kennedy Reyes